# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| **MIKE CRUTCHFIELD** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO.** |
| | ) | _____ |
| | ) | |
| **COKER TIRE COMPANY,** | ) | |
| | ) | **PLAINTIFF DEMANDS** |
| **DEFENDANT.** | ) | **TRIAL BY STRUCK JURY** |

## COMPLAINT FOR DAMAGES

Plaintiff, Mike Crutchfield ("Crutchfield"), brings this action against Coker Tire Company ("Coker Tire"), his former employer, for breach of his Employment Agreement and unjust enrichment for withholding compensation, bonuses, benefits, and severance due to him. In support of his claims, Plaintiff Crutchfield alleges the following:

## JURISDICTION AND VENUE

1. Plaintiff Mike Crutchfield is an individual over the age of 19 and is a resident of Montgomery, Alabama.

2. Defendant Coker Tire is a Tennessee corporation, which maintains its principal place of business in Chattanooga, Tennessee.

3. The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity exists between the parties, as Plaintiff Crutchfield is a citizen of the State of Alabama and Defendant Coker Tire is a citizen of the State of Tennessee.

4. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to claims asserted herein occurred in

1

Montgomery, Alabama in this District and Defendant Coker Tire is subject to personal jurisdiction of this District.

## SUMMARY

5. This is an action for breach of contract and unjust enrichment arising out of Defendant Coker Tire's failure to pay Crutchfield compensation, bonuses, benefits, and severance due upon the termination of his employment without cause on March 15, 2022. Plaintiff seeks compensatory damages, reasonable attorney's fees, and costs.

## THE DEFENDANT

6. Defendant Coker Tire is a Chattanooga, Tennessee-based company that manufactures and sells vintage tires for collector automobiles as well as performance racing tires. Corky Coker, the son of founder Harold Coker, managed the antique division of the company and eventually became owner of the company upon his father's death in 2004. Corky Coker successfully grew the antiques portion of the business until his retirement from the company in 2014.

7. Coker Tire was the sole source of many antique tires due to agreements with the original tire manufacturers. Consequently, it had little or no competition in the antique tire market. In contrast, the performance racing tire market is extremely competitive; customers have many distributors from which to purchase.

## THE PLAINTIFF

8. Plaintiff Crutchfield is a former Coker Tire employee. Corky Coker hired Crutchfield in January 2008 to facilitate expansion of the company's existing product line to include performance racing tires. Coker knew Crutchfield as the owner and operator of Crutchfield Auto Service, Inc. d/b/a GWR/Crutchfield Sales. GWR/Crutchfield Sales was a distributor for two

primary performance racing tire manufacturers: Phoenix Race Tires and M&H Racemaster ("M&H").

9. As part of Coker Tire's expansion plan, Coker first purchased Phoenix Race Tires in the summer of 2007. Next, he purchased all of the assets, real estate excepted, of GWR/Crutchfield Sales. The purchase included its book of business, distribution base, website, etc., and Coker appointed Crutchfield as Vice President of the newly-established Performance Brands Division of Coker Tire.

## THE EMPLOYMENT AGREEMENT

10. When Coker Tire hired Crutchfield in January 2008, the parties executed two agreements. The first agreement was a Non-Competition Agreement, and the second was an Employment Agreement.

11. Pursuant to the terms of the Non-Competition Agreement provided, Coker Tire paid Crutchfield $200,000 as consideration for his agreement not to compete against Coker Tire for a five (5) year period. A true and correct copy of the Employment Agreement is attached hereto as Exhibit A. The Non-Competition Agreement expired by its terms on January 1, 2013. When Coker Tire terminated Crutchfield's employment without cause on March 15, 2022, he was not bound by any non-compete agreement.

12. Coker Tire and Crutchfield also executed an Employment Agreement, which contained certain promises Coker Tire made to Crutchfield to induce him to sell his company. A true and correct copy of the Employment Agreement is attached hereto as Exhibit B. The Agreement, which has no expiration date and which has never been modified, contains the notarized signatures of Crutchfield and Kevin Loveday, Coker Tire's former Vice President of Finance.

3

A. BASE COMPENSATION AND BENEFITS

13. In Section 4(a) of the Employment Agreement, Coker Tire promised to pay Crutchfield an annual base salary and a separate annual bonus:

> Employer shall pay Employee, and Employee shall accept from Employer, in payment for Employee's services hereunder, annual compensation of $90,000, which salary shall be payable in equal installments that the Employer will pay in bi-weekly intervals during the term of this Agreement (the "Base Salary"). Employee's compensation may be adjusted from time to time by Employer, but said compensation cannot be reduced below the Base Salary unless Employee, in consultation with and by agreement of Employer, assumes a position different from the one described in Section 1 above. In the event that Employer becomes a distributor for M&H Race Master Tires ("M&H"), Employer agrees to increase the Base Salary by $10,000 beginning on the date the distributorship begins.

*Id* at Section 4(a). In accordance with the terms of the Agreement, Coker Tire increased Crutchfield's initial, annual base salary from $90,000 to $100,000 after he secured a distributorship agreement with M&H for the benefit of Coker Tire.

14. In Section 4(b) of the Employment Agreement, Coker Tire also promised to provide Crutchfield three (3) weeks annual Paid Time Off ("PTO") and Extended Illness Time ("EIT") hours. *Id*. at Section 4(b). Further, in Section 6(b) of the Employment Agreement, Coker Tire promised that, if it terminated Crutchfield's employment without cause, it would pay him any accrued, but unpaid, benefits, which would include accrued, but unpaid, PTO and EIT. *Id.* at Section 6(b).

B. BONUS STRUCTURE

15. Although Crutchfield's base annual salary remained at $100,000 for the entirety of his employment with Coker Tire, i.e., through March 15, 2022, under Section 4(c) of the Employment Agreement, Coker Tire promised to pay Crutchfield an annual bonus tied to the number of Phoenix and M&H performance racing tires he sold based on the following formula:

4

> As additional compensation, Employee shall receive an annual bonus based on the number of Phoenix or M&H racing tires that Employee sells annually. Such bonus shall be equal to $10,000 for the first 500 racing tires sold by Employee annually in excess of 3,500. In addition, Employee shall receive $20 dollars per racing tire sold in excess of 4,000 to be paid at times mutually agreeable to the parties.

*Id.* at Section 4(c). In addition, under Section 6(b), Coker Tire promised to pay Crutchfield upon termination without cause "any awarded or earned but unpaid bonus he is entitled to pursuant to Section 4(c) above." *Id.* at Section 6(b).

### C. ACCRUED, BUT UNPAID, SALARY AND BENEFITS

16. Under Sections 6(b) of the Employment Agreement, Coker Tire promised to provide Crutchfield at least 45-days advance notice for termination of his employment without cause and to pay any earned, but unpaid, base salary and benefits through the termination date, which would include any such benefits earned, but unpaid, during the mandatory 45-day advanced notice period:

> Termination Without Cause. Employee's employment may be terminated "Without Cause" by providing at least forty-five (45) days advance notice of termination to the Employee in the manner set forth in Section 14 of this Agreement. Upon such termination, Employee shall be entitled to receive any earned but unpaid Base Salary and any accrued benefits through the Termination Date that he may be entitled to receive under all written and adopted Employer policies, and he shall be paid any awarded or earned but unpaid bonus he is entitled to pursuant to Section 4(c) above. Effective as of the Termination Date, this Agreement shall terminate and all obligations of the Employer hereunder except as set forth in this paragraph, shall cease. Employee shall also be entitled to any severance pay given to other employees of Employer employed in similar positions as Employee.

*Id.* at Section 6(c). "Accrued benefits" would include three (3) weeks PTO and EIT hours. *Id* at Section 4(b).

5

### D. UNCONDITIONAL SEVERANCE PAY

17. As set out above, in Section 6(b) of the Employment Agreement, Coker Tire also promised to pay Crutchfield, without condition, "any severance pay given to other employees of Employer employed in similar positions as Employee." *Id.* Thus, Coker Tire's obligation to pay severance to Crutchfield upon termination without cause was not, and could not be, conditioned on his agreement to enter into a post-employment non-compete agreement or an agreement to release or waive any claims he might have against Coker Tire.

### CRUTCHFIELD'S PERFORMANCE UNDER THE AGREEMENT

18. Crutchfield was a strategic hire for the new Performance Brands Division because he previously had distributed Firestone, Phoenix, and M&H products. As the owner and operator of GWR/Crutchfield Sales from 1992 through 2008, Crutchfield cultivated significant and influential relationships with drag racing enthusiasts and track owners alike. His existing relationships with performance tire manufacturers, racers, and track owners, as well as his knowledge of the racing industry, placed him in a unique position to rapidly develop Coker Tire's Performance Brands Division and capture market share.

19. Crutchfield used his personal relationships to successfully negotiate a distribution agreement with M&H Tires on behalf of Coker Tire. Additionally, Crutchfield secured Coker Tire's two largest customers: JEGS High Performance (the second largest mail-order company of automotive equipment in the United States) and Summit Racing Equipment (another large after-market automotive equipment mail-order catalog company), with whom Crutchfield had a pre-existing, 15-year relationship.

20. In 2008, pursuant to Section 4(c) of the Employment Agreement, Coker Tire paid Crutchfield his first annual bonus of approximately $29,480 based on the sale of 4,974 Phoenix and

M&H performance racing tires. This bonus calculation is established by the January 2009 e-mails attached hereto as Exhibit C.

21. While the Performance Brands Division grew under Crutchfield's management, the rest of Coker Tire, and in particular the sale of antique tires, suffered under the strains of the 2007 though 2009 Great Recession.

22. Sometime in 2009, Crutchfield met with Corky Coker and Coker Tire Vice President of Finance Kevin Loveday at Coker Tire's Chattanooga headquarters. Coker told Crutchfield that he was the only one making money; that the company was suffering from the economic downturn; and that the company would need to delay or temporarily suspend Crutchfield's bonus payments. Crutchfield, who, at that time, was bound by his Non-Compete Agreement and was wholly reliant on Coker Tire for income, made no response to Coker's statements. He subsequently left the meeting with the understanding that, although bonus payments would be delayed, Coker Tire would eventually make good on any bonus payments once the economy recovered.

23. No formal, written modification of the Employment Agreement to reflect suspension, elimination, or any change in the bonus provision was ever requested or executed, and the parties never modified the Employment Agreement.

24. After the 2009 meeting with Coker and Loveday, Crutchfield continued to perform his duties as Vice President of the Performance Brands Division, selling tens of thousands of Phoenix and M&H performance racing tires, with the firm belief and understanding that Coker Tire would eventually make good on the bonus issue.

7

## MERGER OF COKER TIRE

25. In 2014, Corky Coker retired, and Wade Kawasaki was appointed as President of Coker Tire. Kawasaki took over the operations of the companies and numerous brands under the Coker Group. Crutchfield's Employment Agreement, however, remained unchanged. Coker later sold Coker Tire and its parent company, the Coker Group, to Kawasaki and members of his leadership team on November 14, 2018.

26. The transaction took place with the financial support of a New York-based private equity firm, Irving Place Capital, and was accomplished by merger and acquisition with Coker Tire as the surviving entity of the merger.

27. The merger documents contain no changes regarding the liabilities and obligations of Coker Tire with regard to its existing Employment Agreement with Crutchfield. A true and correct copy of the 2018 Merger Documents are attached hereto as Exhibit D.

28. Moreover, Section 12 of the Employment Agreement specifically provides:

> 12. <u>Burden and Benefit.</u> This Agreement shall be binding upon and shall inure to the benefit of Employer and Employee and their respective heirs (in the case of Employee), representatives, successors and assigns. No right of obligations of Employer under this Agreement may be assigned or transferred by employer except that such rights of obligations may be assigned or transferred **<u>pursuant to a merger or consolidation in which Employer is the continuing entity</u>**.

Employment Agreement, Exhibit A at Section 12. (emphasis added).

29. After the merger, Coker Tire's Kevin Loveday, the Vice President of Finance who previously signed Crutchfield's Employment Agreement in 2008 and who had informed Crutchfield of the need to delay or temporarily suspend bonus payments in 2009, remained as Coker Tire's Chief Financial Officer.

30. Following the merger, Crutchfield continued to perform his duties as the Vice President of the Performance Brands Division. The Employment Agreement remained in full effect, and Coker Tire continued to pay Crutchfield his annual base salary of $100,000. During his entire 14-year career with Coker Tire, Crutchfield never requested or received a raise.

## CHET PLEWACKI HIRED AS VICE PRESIDENT OF SALES AND BUSINESS

31. In July 2021, Coker Tire hired Michigan-based Chet Plewacki as Vice President of Sales and Business. Although Plewacki and Crutchfield initially got along, Crutchfield soon discovered that Plewacki knew very little about the performance tire business, was primarily focused on cost cutting and the bottom line, and did not understand the highly-competitive nature of the performance racing tire industry or customer sensitivity to pricing.

32. Plewacki proposed immediate cessation of customer discounts (typically 20%) despite Coker Tire's agreement to provide customers 90 days' advance notice of price changes.

33. Despite Crutchfield's warning that the performance tire market was highly competitive and that customers are price sensitive and willing to switch suppliers rather than pay increased prices, Plewacki asked Crutchfield to reduce all discounts to the small dealers Crutchfield had carefully cultivated over the course of his twenty-year career.

34. Crutchfield further warned that the small sales volume of these dealers belied the fact that they were significant influencers in the performance racing tire market and provided product and brand visibility for Coker Tire products.

35. Plewacki neither recognized nor appreciated the critical relationship between market share and the personal relationships Crutchfield had developed with distributors like M&H and customers such as JEGS High Performance, Summit Racing Equipment, as well as other small mom and pop dealers.

9

36. At the December 2021 Performance Racing Industry (PRI) trade show, Plewacki and Crutchfield had dinner together when Plewacki began to disparage Coker Tire's Marketing Director, Marla Moore, who was later relieved in December 2022. Crutchfield understood Plewacki to be inviting him to provide input and agreement to the criticisms of Moore. As a result of this conversation, Crutchfield realized that Plewacki's focus on the bottom line had shifted to a reduction in personnel.

## TERMINATION OF CRUTCHFIELD'S EMPLOYMENT WITHOUT NOTICE

37. In February 2022, Crutchfield became aware that he was in Plewacki's crosshairs when Plewacki copied Crutchfield on an email to customer JEGS High Performance. In that email, Plewacki removed Crutchfield as the point of contact for the JEGS account. JEGS was instead instructed to communicate directly with Stephanie Davis, a former secretary who Coker Tire reassigned to take telephone sales orders.

38. JEGS is the second largest mail-order company of automotive equipment in the United States and one of Coker Tire's largest performance racing tire customers, if not the largest customer. Crutchfield, along with Gary Brewer, had personally travelled to Ohio and successfully solicited both JEGS and Summit Racing Equipment.

39. Crutchfield confronted Plewacki about the meaning of the email, asking directly, "Am I being relieved?" Plewacki denied that the email had any adverse impact and alleged that his goal was for Crutchfield to increase sales for other accounts. Crutchfield believed that Plewacki was cutting Crutchfield off from his major clients and stated, "We need to have a serious talk," to which Plewacki responded, "I'm in a bad mood, and you don't want to have that conversation today." Crutchfield asked Plewacki, "Why am I even needed?", and the conversation ended. Prior

10

to that conversation, Crutchfield had received an excellent rating in his most recent November 2021 performance review.

40. Approximately one month later, Crutchfield's suspicions were confirmed. On March 15, 2022, **without any advanced notice**, Plewacki issued a conference call invite to Crutchfield, as well as David Levi, Coker Tire's Vice President of Operations. When the call began, Plewacki announced, "I might as well get to it. Your position is being eliminated."

41. Plewacki turned the call over to Levi, who presented a severance package to Crutchfield. The termination date was immediate; there was no 45-days advanced notice of termination as Section 6(b) of the Employment Agreement mandated for terminations without cause. A true and correct copy of the Proposed Severance Agreement is attached hereto as Exhibit E. Levi profusely apologized to Crutchfield during the entire process of explaining the Proposed Severance Agreement. Coker Tire did not even provide Crutchfield, who was 68 years old, 21 days to consider the severance offer, which the Older Worker Benefit Protection Act (OWBPA) of 1990 legally mandates.

## COKER TIRE FAILED TO HONOR THE EMPLOYMENT AGREEMENT

42. The Proposed Severance Agreement Levi presented to Crutchfield offered 14-weeks' severance pay conditioned upon (1) execution of a general release and waiver of all claims against Coker Tire and (2) Crutchfield's assent to a two (2) year non-compete agreement, prohibiting him from engaging in any business related to performance racing tires, antique and collector tires, or any similar products Coker Tire distributes. *See* Proposed Severance Agreement, Exhibit E at ¶¶ 5, 6, and 8.

43. Coker Tire's Proposed Severance Agreement was wholly contrary to the promises it made to Crutchfield when Coker Tire purchased his business in 2008. Those promises, as

11

embodied in the plain terms of the Employment Agreement, required Coker Tire to do the following things if it terminated Crutchfield's employment without cause:

- Provide 45-days advance notice of termination (Section 6(b));
- Pay accrued, but unpaid, PTO and EIT hours (Section 4(b) and 6(b));
- Pay earned, but unpaid, salary and benefits (Section 6(b));
- Pay unconditional severance (Section 6(b)); and
- Pay earned, but unpaid, annual bonuses (Section 4(c)).

44. More specifically, contrary to Section 6(b) of the Employment Agreement, when Defendant Coker Tire terminated Crutchfield's employment without cause on March 15, 2022, it did so without providing him 45-days advance notice and without paying him earned, but unpaid, salary that accrued during the forty-five (45) day advance notice period. The value of the earned, but unpaid, salary for the mandatory 45-day advance notice period is $12,500.

45. Contrary to Section 4(b) and 6(b) of the Employment Contract, when Coker Tire terminated Crutchfield's employment without cause on March 15, 2022, it failed to pay him all accrued, but unpaid, PTO (215.29 hours) and EIT (236.47 hours), valued at $21,720.

46. Contrary to Section 6(b) of the Employment Agreement, when Coker Tire terminated Crutchfield's employment without cause on March 15, 2022, it failed to pay him severance without conditions. Moreover, Coker Tire failed to pay Crutchfield severance commensurate with the level of severance it provided to other employees occupying similar positions. In particular, when Coker Tire terminated Crutchfield's employment, he was the Vice President of Performance Brands Division. On information and belief, Coker Tire paid similarly-situated employee Jim Hildebrand, Coker Tire's former Vice President of Export Sales, six (6) months (or 26-weeks) severance. Consequently, Section 6(b) of the Employment Agreement obligated Coker Tire to pay Crutchfield six (6) months (or 26-weeks) severance totaling $50,000,

which it failed to pay. In addition, on information and belief, Coker Tire also provided Marketing Director, Marla Moore, a severance package in excess of what it offered Crutchfield.

47. Contrary to Sections 4(c) and 6(b) of the Employment Agreement, when Coker Tire terminated Crutchfield's employment without cause on March 15, 2022, it failed to pay him any earned, but unpaid bonuses. Pursuant to Section 4(c) of the Employment Agreement, each annual bonus is due no later than thirty (30) days after the annual bonus requirement is met, i.e., January 30 of the following year.

48. Although Crutchfield is without access to Coker Tire's sales information, he maintained a private count of the approximate number of Phoenix and M&H performance tires he sold annually for the period of 2016 through 2021. Those totals and the corresponding annual bonus earned, but unpaid, for each relevant year are as follows:

| Year | Phoenix & M&H Tires Sold | Bonus Based on $10,000 for First 500 Tires Over 3,500 Tire<br>+<br>$20/Tire For Sales Above 4,000 |
|---|---|---|
| 2016 | 9,582 | $111,640 |
| 2017 | 10,992 | $139,840 |
| 2018 | 13,689 | $193,780 |
| 2019 | 11,396 | $147,920 |
| 2020 | 12,153 | $163,060 |
| 2021 | 12,164 | $163,280 |
| **TOTAL** | **69,976** | **$979,520** |

Crutchfield does not seek accrued interest for these earned, but unpaid, annual bonuses.

**COUNT I**
**BREACH OF CONTRACT**
**(Severance Pay)**

49. Crutchfield incorporates by reference all prior allegations of the Complaint as if fully stated herein.

50. Coker Tire breached Section 6(b) of the Employment Agreement when it terminated Crutchfield's employment without cause on March 15, 2022, because it failed to pay him severance without conditions.

51. When Coker Tire terminated Crutchfield's employment without cause on March 15, 2022, he was the Vice President of Performance Brands Division. On information and belief, Coker Tire paid similarly-situated employee Jim Hildebrand, Coker Tire's former Vice President of Export Sales, six (6) months (or 26-weeks) severance.

52. Consequently, Section 6(b) of the Employment Agreement obligated Coker Tire to pay Crutchfield six (6) months (or 26-weeks) severance totaling $50,000.

53. Coker Tire, however, failed to pay Crutchfield severance commensurate with the level of severance it provided to other employees occupying similar positions, including, without limitation, Jim Hildebrand.

WHEREFORE, premises considered, Crutchfield demands judgment against Defendant Coker Tires for compensatory damages in the amount of $50,000, costs and expenses related to litigation, including reasonable attorney's fees (as provided by Section 13 of the Employment Agreement), and for such other, further, or different relief as may be just and proper.

## COUNT II
## BREACH OF CONTRACT
**(Earned, But Unpaid, Salary)**

54. Crutchfield incorporates by reference all prior allegations of the Complaint as if fully stated herein.

55. Coker Tire breached Section 6(b) of the Employment Agreement when it terminated Crutchfield without cause on March 15, 2022, because it terminated his employment

14

without providing him forty-five (45) days advance notice and failed to pay Crutchfield earned, but unpaid, salary that accrued during the forty-five (45) days advance notice period.

56. The value of the earned, but unpaid, salary for the mandatory 45-day notice period is $12,500.

WHEREFORE, premises considered, Crutchfield demands judgment against Defendant Coker Tires for compensatory damages in the amount of $12,500, costs and expenses related to litigation, including reasonable attorney's fees (as provided by Section 13 of the Employment Agreement), and for such other, further, or different relief as may be just and proper.

## COUNT III
## BREACH OF CONTRACT
**(Accrued, But Unpaid, Benefits)**

57. Crutchfield incorporates by reference all prior allegations of the Complaint as if fully stated herein.

58. Coker Tire breached Sections 4(b) and 6(b) of the Employment Contract, when it terminated Crutchfield's employment without cause on March 15, 2022, because it failed to pay him all accrued, but unpaid, PTO (215.29 hours) and EIT (236.47 hours).

59. The value of the accrued, but unpaid, PTO and EIT is $21,720.

WHEREFORE, premises considered, Crutchfield demands judgment against Defendant Coker Tires for compensatory damages in the amount of $21,720, costs and expenses related to litigation, including reasonable attorney's fees (as provided by Section 13 of the Employment Agreement), and for such other, further, or different relief as may be just and proper.

15

## COUNT IV
## BREACH OF CONTRACT
### (Earned, But Unpaid, Annual Bonuses)

60. Crutchfield incorporates by reference all prior allegations of the Complaint as if fully stated herein.

61. Cocker Tire breached Sections 4(c) and 6(b) of the Employment Agreement, when it terminated Crutchfield's employment without cause on March 15, 2022, because it failed to pay him earned, but unpaid, annual bonuses, totaling $979,520 for the period of 2016 through 2021.

WHEREFORE, premises considered, Crutchfield demands judgment against Defendant Coker Tires for compensatory damages in the amount of $979,520 costs and expenses related to litigation, including reasonable attorney's fees (as provided by Section 13 of the Employment Agreement), and for such other, further, or different relief as may be just and proper. Crutchfield does not seek any interest associated with this breach of contract.

## COUNT V
## UNJUST ENRICHMENT

62. Crutchfield incorporates by reference all prior allegations of the Complaint as if fully set out herein.

63. Defendant Coker Tire has wrongfully withheld from Crutchfield six (6) month severance pay; forty-five (45) days of earned, but unpaid, salary; compensation for accrued, but unpaid, PTO (215.23 hours) and EIT (236.47 hours); six (6) month's severance, and six (6) years of earned, but unpaid, annual bonuses because he refused to sign a two year, post-employment non-compete agreement and a general release and waiver of all claims.

64. Defendant's actions are unjust and intentionally harsh.

65. The retained salary, severance, bonus, and benefits are valued at $1,063,740.

16

WHEREFORE, premises considered, Plaintiff Crutchfield demands judgment against Defendant Coker Tire for compensatory and punitive damages in an amount to be shown according to proof, and for such other, further, or different relief as may be just and proper.

Dated: January 18, 2023

Respectfully submitted,

*/s/ Christopher W. Weller*
**CHRISTOPHER W. WELLER (ASB-6640-W81C)**
**CAITLIN COBB (ASB-2959-B63E)**

*Attorneys for Plaintiff Mike Crutchfield*

**OF COUNSEL:**

**CAPELL & HOWARD, P.C.**
150 South Perry Street (36104)
Post Office Box 2069
Montgomery, AL 36102-2069
Telephone: (334) 241-8000
Facsimile: (334) 323-8888
Email: chris.weller@chlaw.com

*Attorneys for Plaintiff*

**JURY DEMAND**

Plaintiff hereby demands a jury trial.

Dated: January 18, 2023

Respectfully submitted,

*/s/ Christopher W. Weller*
**CHRISTOPHER W. WELLER (ASB-6640-W81C)**
**CAITLIN COBB (ASB-2959-B63E)**

*Attorneys for Plaintiff Mike Crutchfield*

**OF COUNSEL:**

**CAPELL & HOWARD, P.C.**
150 South Perry Street (36104)
Post Office Box 2069
Montgomery, AL 36102-2069
Telephone: (334) 241-8000
Facsimile: (334) 323-8888
Email: chris.weller@chlaw.com